# JACOB M. ALLEBACH v. REIFF H. GODSHALK.

## ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

### Argued April 18, 1887—Decided May 9, 1887.

Allebach entered into articles of agreement with sixty-six others (among whom were Kulp and Godshalk), to convey to them a tract of land. Separate deeds were to be executed for such a portion thereof as should fall to each by a lottery. Godshalk drew lot 38, Kulp, lot 42, and exchanged, Godshalk taking possession of lot 42. Deeds were executed but not delivered. Godshalk put improvements on lot 42, which were afterwards removed. In an ejectment by Allebach against Godshalk to recover lot 42, *held:*

1. That as the defendant's title originated in pursuance of a lottery bargain it was void: § 52, act of March 31, 1860, P. L. 396.

2. That as the deed for lot 42 had never been delivered to the defendant, the contract was void under the statute of frauds.

3. That as the plaintiff showed title untainted by the collateral illegal contract he was entitled to recover.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 151 January Term 1886, Sup. Ct.; Court below, No. 19 September Term, 1883, C. P.

This was an action of ejectment in the court below by Jacob M. Allebach against Reiff H. Godshalk, to recover a parcel of ground at Rahn's Heights, Perkiomen township, Montgomery county.

On the trial the plaintiff proved title in himself and rested.

The defendant filed a disclaimer of all land claimed in the writ except lot No. 42 in the plan of Rahn's Heights, and proved an article of agreement, under seal dated October 25, 1875, between Jacob M. Allebach of the one part and about sixty-six other persons named (embracing Reiff H. Godshalk and Martin Kulp), of the other part, for the consideration of $13,350, of which the sum of $4,450 was payable in cash on the execution of the articles, the said party of the first part therein covenanting to convey " by such deeds of conveyance

as he or they or his or their counsel learned in the law shall advise," unto the parties of the second part a tract of land at Rahn Station, containing about thirty-six acres more or less; following by evidence tending to show that after a division into lots was made deeds were executed, including one to defendant for lot 42, drawn under direction of a committee and left with the plaintiff, but not delivered to the defendant; that defendant paid $50 and gave his note for $100 at the time the contract was signed; that subsequently, under permission at the time given by the plaintiff, the defendant had fenced the lot in, built a shop on it and had dug a well, but the fence and shop were afterwards removed; and that a balance of $68 remained unpaid. On cross-examination of defendant it appeared that defendant had drawn lot 38 and had exchanged with Martin Kulp, who had bought lot 42; that when the contract of sale was made it was part of the arrangement that the parcel was to be divided into lots and a distribution to be made by a lottery, in which distribution lot 38 fell to defendant. The testimony of defendant as to his possession and improvements upon lot 42 was as follows: "At the time I gave him this check I gave him a note of $100; that was the full consideration of this lot; after I had done that and at the time I fenced it in he gave me privilege to; he said I should fence that lot in; I wanted to fence it in along with my other lot along side of it; he told me I should fence it in; I asked him about it before I did any fencing; I told him I was going to move the fence away from the other lot to inclose that right along there with it, and asked him for permission; he gave me permission to do so; he said I could have the deed any time whenever I wanted it; he told me it was at Schwenksville; when I fenced it in was during the summer of 1876 and the note was maturing at that time."

On rebuttal it was shown on the part of the plaintiff that when the agreement was signed it was arranged (and so carried out) that the plaintiff should then retire, and in his absence the tract was to be laid off into lots and the lots distributed by a lottery under the management of a committee appointed by the purchasers in the agreement; that the defendant drew lot 38; that after the drawing was held, the plan was handed to plaintiff; that plaintiff had not consented

to the exchange by defendant with Martin Kulp, who had never paid anything for his lot 42; that the deeds when prepared were deposited in bank for safe keeping, and plaintiff did not know that the deed to defendant purported to convey lot 42, and that he had not given permission to the defendant to occupy or improve that lot.

The court, B. M. BOYER, P. J., charged:

Gentlemen of the Jury:—October 25, 1875, the plaintiff entered into a contract in writing with a number of individuals to sell them certain premises, containing about thirty-six acres of land, for the sum of $13,350; $4,450 of which was paid as down money, and the remaining $8,900 was to be paid on the first of April, 1876. The plaintiff covenanted to convey the premises by such deeds of conveyance as counsel learned in the law should advise to the purchasers. This, on its face was a lawful contract. But it is said by the plaintiff to have been an illegal and void contract, because of the method resorted to by the purchasers to make partition of the premises amongst each other. But it is an illegal contract only in case the plaintiff was himself a party to the illegal understanding and agreement to divide the land by lottery. If this were not a part of the original understanding with the plaintiff, he is free from complicity in the unlawful transaction which followed, and to him it could not matter how the purchasers divided their property. All he was bound to regard was the payment of the purchase money, and the execution of the conveyances as required by the purchasers, and they could have enforced against him, and he against them, the terms of the original contract. But if the plaintiff originated the scheme of the lottery, or was cognizant of it and a promoter of it at the date of the written contract, then the latter was a mere device to evade the law, which could not have been enforced on either side. [But I regard the contract in question between the plaintiff and defendant in this suit as standing independent of the original contract of October 25, 1875. Lot No. 42 was not drawn by the defendant in the lottery. He drew another number; and whether the transaction which resulted in the drawing, were legal or illegal, the defendant could not, under it, have made any demand for the conveyance to him of the land in question. Neither could the plaintiff have compelled

him to accept or pay for it. If the defendant has any claim to the possession of lot No. 42 it arises upon a new and independent contract, outside of the original transaction.][8] He derived no title or interest from Martin Kulp, who drew the lot and is said to have surrendered his claim to it to the defendant. What right or title he has rests solely upon what took place between the plaintiff and the defendant concerning it ; and here is the vital and most material point in this controversy. Did a parol contract take place between the plaintiff and defendant concerning it ? Did the plaintiff agree that the defendant should have the lot, Kulp being out of the way? Was the price agreed upon ? Was possession given in pursuance of this contract, to the defendant ? Did the defendant make valuable improvements upon the premises with the knowledge and consent of the plaintiff ? Was any part of the purchase money paid, if so how much ? These are all material points for the consideration of the jury. There has been much discussion about the lottery, which was, in the light the court views this matter, unimportant. For it is not through or by force of the lottery that the defendant can claim the rightful possession of the premises ; for the lottery assigned the premises to another person ; and it is only by force of the new agreement made with the plaintiff that the defendant can maintain his right of possession to the lot in question. Now the claim set up by the defendant is founded upon a verbal contract, called in law language a contract by parol; and there is a statute against the transfer of title to lands otherwise than by writing. It is a wise statute, intended to prevent the frauds likely to be practiced, and the perjuries likely to be committed to the confusion of titles, if sales of land could be effected by verbal transfers. But, to prevent injustice, certain exceptions have been sanctioned by courts, and estates in land may sometimes be acquired even by parol ; as for example, where the possession has been given under a contract; and the purchase money, or a considerable part of it, has been paid ; or valuable improvements made upon the premises with the knowledge and consent of the seller, so that it would be unjust and inequitable to rescind the contract and give back the land to the seller. Whether or not such a state of facts exists in this case, is the main matter for your consideration. [If there

were a verbal contract between the plaintiff and defendant that he should have the lot in question upon paying a certain fixed price, Kulp being out of the way, and if in pursuance of this arrangement the defendant were allowed by the plaintiff to take possession of the premises, and with the knowledge and consent of the plaintiff, to make valuable improvements thereupon, which could not adequately be compensated for in damages; so that it would be inequitable under those circumstances to allow the seller to take back the property; if you so find it, it is a parol contract which may be sustained, notwithstanding the statute upon the subject; and if you find these facts to exist in this case, under these instructions, the defendant would be entitled to retain possession of the lot.] [9] Sometimes, in order to do exact justice between the parties, juries may render a conditional verdict, and after I have answered the points which have been presented to me on both sides to charge upon, I will further call your attention to this subject.

The plaintiff requests me to charge you as follows:

1. That the plaintiff having established title to himself out of the commonwealth, is entitled to the verdict in his favor for the premises described in the writ.

Answer: This will depend upon the facts to be found by the jury. [1]

2. That under the evidence of this case the defendant has failed to show such a parol contract as to take the case out of the operation of the statute of frauds.

Answer: We decline to so instruct the jury. It will depend upon how the jury find the facts submitted to them. [2]

3. That under all the evidence in this case the verdict must be for the plaintiff.

Answer: We decline to affirm this point. [3]

Defendant has also presented to me certain points upon which to charge the jury.

1. If the jury find that the defendant took exclusive possession of lot 42, continued to hold such possession to this date, made valuable improvements with the assent of the plaintiff, tendered the balance of the purchase money, and that the metes and bounds of said lot were fully described by deed, drawn to the defendant and duly acknowledged, but not delivered, such facts are sufficient to take the case out of the statute of frauds, and the verdict should be for the defendant.

Answer: This is true if the jury find these facts, and that possession of the premises was delivered and improvements made in pursuance of the parol contract of sale existing between the parties. [4]

2. If the defendant went into possession of lot 42 in pursuance of an illegal lottery, continued in exclusive possession of the same to this date, paid part of the purchase money, made valuable improvements with the knowledge and assent of the plaintiff, and this was all done in pursuance of such illegal lottery set up by the plaintiff and others, then the verdict must be for the defendant

Answer: This would be true if the jury were to 'find the facts as here stated; for in that case the plaintiff could not take advantage of his own wrong and ask the aid of the court to recover back that which in pursuance of an illegal and forbidden contract he had delivered. [5]

3. If the jury find from the evidence that the distribution was by owners in common of a large tract of land, such distribution is not a lottery, even if the purparts are of unequal value.

Answer: If from the beginning the land was purchased with a design to make partition by lot in parcels of unequal value, in the manner employed, as shown by the evidence, it was an illegal lottery; otherwise not. [6]

4. If the plaintiff were a party to an illegal lottery by which the defendant secured possession of lot 42, he cannot set up such lottery as a bar to the defendant's title.

Answer: This is true. [7]

Now, gentlemen, in case you should find the facts which I have stated to be essential in order to support a parol contract, you may, if you choose, render a conditional verdict. In that case you will consider, and balance the equities between these parties. [You would ascertain how much of the purchase money had been paid; and on this point there has been some controversy as to whether the $50 first paid should be counted as a payment upon this lot. The court instruct you, if you find that there was a parol contract that the defendant should have lot 42 instead of the lot he drew, and it was the understanding that the $50 should be considered as part of the purchase money, then, though it was originally paid without

reference to any particular lot, it may be counted as a payment upon the lot in question, the plaintiff having consented, if you so find, to such an appropriation.] [10] And you will find from the facts what additional purchase money was paid by the defendant upon the lot. There. is some conflict of testimony upon this point, which you must reconcile and decide upon as you best can · from the evidence. In case you find that there was a tender of the balance of purchase money by the defendant to the plaintiff at any time, and the amount tendered constituted the whole balance that was due, then, although you might calculate interest upon it from the time it became due up to that date, you would not calculate interest beyond the date of the tender. The court leave the facts entirely with the jury; but in order that the jury, in a certain event, may not be embarrassed, the court have moulded a verdict, in case you should come to the conclusion that a conditional verdict in this case is required under the instructions which have been given to you, and the facts as you shall find them. . . . . · You can mould the verdict as you please. You can attach to it what conditions you choose; and the court have only indicated what they regard as a proper form in case you should come to the conclusion that such a verdict is required to do equity between the parties.

[You can find a verdict, if under the instructions you have received you consider yourself justified, absolutely in favor of the plaintiff, or absolutely in favor of the defendant.] [11]

Plaintiff and defendant both except to the charge of the court and bills sealed.

The verdict of the jury was for the defendant, and after the refusal of a motion for a new trial judgment was entered, whereupon the plaintiff took this writ, assigning that the court below erred,

In the answers to the plaintiff's points [1] [2] [3]

In the answers to the defendant's points [4] [5] [6] [7]

In those parts of the charge embraced in [ ] [8] [9] [10] [11]

*Mr. Charles Hunsicker*, for the plaintiff in error:

1. The court erred in holding that the defendant held his title outside the lottery and could maintain his possession under his parol contract. By section 52, act of March 31,

1860, P. L. 396, the defendant paying the $50 in the lottery as a payment on his purchase, the purchase was void. This act is in advance of the act of Feb. 17, 1762, 1 Sm. L. 246, under which Seidenbender v. Charles, 4 S. & R. 151, was decided.

2. The plaintiff stands on his title, nor does he need to recover by or through the lottery transaction. But the defendant must stand on the lottery transaction in which he paid his $50: Swan v. Scott, 11 S. & R. 155; Hipple v. Rice, 28 Penn. St. 406; Filson v. Himes, 5 Idem 452.

3. It is admitted that the agreement of October 25, 1875, was perfectly legal on its face; but plainly it was but part of the device.

4. The parol contract proved does not amount to such a contract as can be enforced. The contract was vague and depends on one witness only and he the defendant. The decisions are clear as to the insufficiency of the evidence: Woods v. Farmare, 10 W. 195; McKowen v. McDonald, 43 Penn. St. 441; Postlethwait v. Freese, 31 Idem 472; Detrick v. Sharrer, 95 Idem 521; Moore v. Small, 19 Idem 467.

5. The court allowed the jury to find either for plaintiff or defendant, and thus unrestricted, a clear verdict was given for defendant, although he admitted he owed plaintiff $76 on the lot.

*Mr. F. G. Hobson* and *Mr. Aaron S. Swartz*, for defendant in error:

1. The plaintiff was the actor who profited by the lottery scheme. He sold his farm under that arrangement for an exorbitant price. Can he now plead his own illegal act?

The court cannot listen to such proofs: Way v. Foster, 1 Allen 408; Holman v. Johnson, Cowp. 341; Gregg v. Wyman, 4 Cush. 322; Foster v. Thurston, 11 Idem 322; Phalen v. Clark, 19 Conn. 421 (50 Amer. Dec. 253); Wall v. Savings Inst., 3 Allen, 96; Stewart v. Kearney, 6 W. 453.—" That a collusive contract binds the parties to it is a principle which commends itself no less to the moralist than to the jurist; for no dictate of duty calls on a judge to extricate a rogue from his own toils."

2. It matters not whether defendant was alloted No. 38 or

No. 42. The jury have found by their verdict that the defendant did obtain possession of the land in question by the express assent of the plaintiff. How do the statutes affect his title? The doctrine of Seidenbender v. Charles, 4 S. & R. 151, interpreting the act of February 17, 1762, 1 Sm. L. 246, is that whatever has been done and executed in pursuance of a lottery will be left by the court as it is found. Even under § 52 of the act of March 31, 1860, P. L. 396, the wrong-doer cannot take advantage of his own wrong: Balliett's Case, 1 Leg. Chron. 198.

3. The parol contract was so far executed that it would be unjust and inequitable to disturb the defendant in his possession: Woods v. Farmare, 10 W. 195; and the deed was properly admitted in evidence: Hart v. Carol, 85 Penn. St. 508; McGibbeny v. Burmaster, 53 Idem 332; Jamison v. Dimock, 95 Idem 52; Lauer v. Lee, 42 Idem 165; Reed v. Reed, 12 Idem 121.

OPINION, MR. JUSTICE GORDON:

The defence, in the case before us, is of a very flimsy and unsubstantial kind; an alleged parol sale with nothing to deliver it from the grasp of the statute of frauds and perjuries. Godshalk's claim to the lot described in the writ had its origin in the lottery contract of the 25th of October, 1875, and was, of course, void under the act of March 31, 1860. Martin Kulp had drawn at the lottery lot No. 42, the one in controversy, and the defendant No. 38. They agreed to exchange and to this arrangement, it is said, the plaintiff assented. It is further alleged that the deed for this lot was duly executed and delivered in escrow to the Schwenksville Bank. That the deed was executed by the plaintiff, along with others, is admitted, but that it was delivered, even in escrow, is denied. John C. Boorse, who drew the deeds, and had them executed, says he delivered them to the plaintiff, and that he did not understand that it was part of the contract. that they should be deposited in the bank for delivery, whilst Allebach testifies that he left them at the bank for his own convenience, and afterwards took them to his own house. All this, however, matters but little, for at best, this deed not having been in fact delivered, could not have been used except as proof of

the terms and conditions of the parol sale, and without other proof could not, of itself, avoid the statute: Hart v. Carroll, 85 Penn. St. 508. Furthermore, this deed, with the others, was executed in pursuance of the lottery agreement, upon which the defendant's title, whether to lot No. 38 or No. 42, depended, so that it was altogether worthless for any purpose. Moreover, the payment of the fifty dollars purchase money was, as Godshalk confesses, paid on the lottery contract of October 25, 1875, and is in consequence out of the case. Again: as to the improvements which the defendant alleged he put on the lot in pursuance of the parol sale, these can have no effect to redeem the case from the statute; for, except the fence, they were removed before or about the time of the bringing of this ejectment suit. It is thus manifest that the defendant's oral contract has not the shadow of foundation on which to stand. As to the plaintiff, were he attempting to enforce the 25th of October contract, he, in like manner, could have no standing in court; for it would be allowable to prove that this contract was executed for an unlawful purpose, hence his defeat would be inevitable: Bredin's Appeal, 92 Penn. St. 241. But he is attempting nothing of the kind; his suit is ejectment, and he stands upon an untainted legal title which cannot be affected by the collateral illegal contract, any more than by the unexecuted parol contract. By all rules, therefore, the plaintiff should have had the verdict, and so the court ought to have instructed the jury. As what we have said sustains the plaintiff's first assignment of error, we need not notice the others.

> The judgment is reversed, and a new *venire* ordered.